1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11   CARL LASKEY o/b/o            )  NO. EDCV 06-00398 SS
     CARL D. LASKEY II,           )
12                                )
               Plaintiff,         )  **MEMORANDUM DECISION AND ORDER**
13                                )
          v.                      )
14                                )
     MICHAEL J. ASTRUE,           )
15   Commissioner of the Social   )
     Security Administration,     )
16                                )
               Defendant.         )
17   _____)

18

19       Carl Laskey brings this action on behalf of his minor son, Carl D.

20   Laskey II ("Plaintiff"),[1] seeking to overturn the decision of the

21   Commissioner of the Social Security Administration (hereinafter the

22   "Commissioner" or the "Agency") denying his application for Supplemental

23   Security Income ("SSI").[2]  Alternatively, he asks for a remand.  The

24   _____

25       [1] Although this action was brought by Carl Laskey, the Court refers
     to Carl D. Laskey II as Plaintiff throughout this decision because he is
26   the real party in interest.

27       [2] Michael J. Astrue has become the Commissioner of Social Security
     Administration.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
28   Procedure, he is substituted for Commissioner Jo Anne B. Barnhart as the
     defendant in this suit.  F.R.C.P. 25(d)(1).  The instant action survives

parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on January 3, 2007. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On February 5, 2004, Plaintiff protectively filed an application for SSI disability benefits under Title XVI of the Social Security Act. (Administrative Record ("AR") 72).[3] He alleged that he became disabled on February 18, 2002 due to Attention Deficit Hyperactivity Disorder ("ADHD"). (AR 72, 85).

After the Agency denied his claim initially and upon reconsideration, a hearing was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on October 26, 2005. (AR 16). Plaintiff, who was represented by counsel, testified briefly. (AR 241-45). Plaintiff's father and a medical expert ("ME"), Joseph Mahnachargo, also testified. (AR 246-59). On January 9, 2006, the ALJ issued a decision denying benefits. (AR 16-20). Plaintiff sought review of ALJ Schloss's decision before the Appeals Council, which upheld the decision on

"notwithstanding any change in the person occupying the office of Commissioner of Social Security[.]" 42 U.S.C. § 405(g).

[3] Plaintiff previously applied for SSI in November 2002. (AR 68). On March 25, 2003, the Agency determined that Plaintiff was not eligible for SSI. (AR 25-28).

February 24, 2006.  (AR 6-8).  Plaintiff commenced the instant action on April 12, 2006.

### FACTUAL BACKGROUND

Plaintiff was born on April 22, 1995 (AR 62), and was ten years old at the time of the hearing.  (AR 16).  Plaintiff lives with his father, siblings, and step-mother.  (AR 249).  His biological mother left the family when Plaintiff was two years old.  (AR 159).  At the time of the hearing, Plaintiff's mother was incarcerated.  (AR 160).  Plaintiff was prenatally exposed to several illegal drugs.  (AR 159-60).

**A.   Relevant Medical History**

The record does not include detailed reports or opinions from Plaintiff's treating psychologist or psychiatrist.  The record reveals that Plaintiff saw Dr. Friedman from 1998 until 2005.  (AR 135).  It also notes that Dr. Raval-Ronag examined Plaintiff on September 13, 2005.  (AR 155).  The San Bernardino Department of Behavioral Health provided documentation confirming that on August 27, 2002, Plaintiff was diagnosed with ADHD.  (AR 156-57).

In February 2003, Dr. Clifford Taylor conducted a psychological evaluation of Plaintiff.  (AR 159-64).  Dr. Taylor determined that Plaintiff's IQ was well within the average range, that he was "slightly distractible," that he had mild to moderate problems maintaining focus and concentrating, and that his overall mood was normal.  (AR 161).  He noted that there was no evidence that Plaintiff had a learning

3

disability because his academic achievement and scores were consistent with his level of functioning. (AR 163). Dr. Taylor opined that Plaintiff is able understand and respond to increasingly complex requests and that Plaintiff had a Global Assessment of Functioning ("GAF") score of 75.[4] (Id.).

In April 2004, Dr. Harrel Reznick conducted a psychological evaluation of Plaintiff. (AR 179-85). Dr. Reznick diagnosed Plaintiff with ADHD and Disruptive Behavior Disorder, Not Otherwise Specified. (AR 184). He found that Plaintiff could benefit from individual counseling and effective parenting training for Plaintiff's father. (AR 184-85). Dr. Rezinick noted that Plaintiff did not appear to require special education services. (AR 185).

Between March 2003 and July 2004, four consultative physicians reviewed Plaintiff's records.[5] All four physicians determined that Plaintiff's ADHD was a severe impairment but that it did not meet,

---

[4]   A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV"). A GAF score of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." See DSM IV, at 34.

[5]   Each doctor submitted a report regarding Plaintiff's impairments. Dr. K. Gregg submitted his report in March 2003 (AR 172); Dr. Amado submitted his report in May 2003 (AR 165); Dr. Michael Skopec submitted his report in May 2004 (AR 186); and Dr. Donald Williams submitted his report in July 2004. (AR 192).

medically equal or functionally equal a listing. (AR 165, 172, 186, 192). One doctor found that Plaintiff had a marked limitation in attending and completing tasks. (AR 167). The other three doctors reported that Plaintiff's limitation in attending and completing tasks was less than marked. (AR 174, 188, 194). All four physicians found that Plaintiff had a less than marked limitation in interacting and relating with others. (AR 167, 174, 188, 194). Two physicians determined that Plaintiff had a less than marked limitation in acquiring and using information. (AR 167, 194). The remaining two physicians opined that he had no limitation in that domain. (AR 174, 188). All four doctors found that Plaintiff had no limitations in moving and manipulating objects, caring for himself, or in his health and physical well-being. (AR 169, 175, 189, 195).

**B.   Father's Testimony**

Plaintiff's father testified that Plaintiff had already been suspended from school three time that school year,[6] that he was unwilling to do schoolwork, and that he was taking psychotropic drugs, Mirtazapine and Concerta, for the ADHD. (AR 245-47). Plaintiff's father described Plaintiff's serious behavioral problems and complained that Plaintiff's academic performance was significantly substandard. (AR 247-48). He also testified that Plaintiff had previously taken Ritalin but "it was making him a zombie." (AR 248). Plaintiff's father reported that Plaintiff was, at some point, taking Adderall and Risperdal but that those drugs were not effective. (Id.).

---

[6] At the time of the hearing, Plaintiff was in the fifth grade. (AR 241)

**C.**     **School Reports**

The record contains a letter to Plaintiff's parents explaining that Plaintiff was being reassigned to a Special Day Class closer to their home.  (AR 199).  The letter described Plaintiff as being a child with mild to moderate special needs.  (<u>Id.</u>).

In November 2001, Plaintiff's teacher, Jodi Moran, reported that Plaintiff was performing far below grade level and that his behavior was extremely disruptive.  (AR 201).  She complained that Plaintiff stole from her classroom and from other teachers.  (<u>Id.</u>).  She described his "outbursts" as detrimental to Plaintiff's education and distracting to his fellow classmates.  (<u>Id.</u>).

The record includes thirteen Student Referral Forms from Barton Elementary School which are dated from December 2003 through November 2004.  (AR 202-05, 206, 209, 211-18).  The referrals document "inappropriate and unacceptable behavior" including refusing to do work or follow instructions (AR 202, 216), throwing things in the classroom (AR 203), antagonizing other students(204), using obscene language and gestures (AR 209), and stealing candy.  (AR 212).  Also, the record includes two Notices of Suspension from San Bernardino City Unified School District.  (AR 208, 210).  Plaintiff was suspended from school for entering a teacher's classroom without permission and lying about why he was there (AR 208), and for stealing from a teacher and hiding the teachers keys.  (AR 210).  There is also other documentation that Plaintiff was removed from class five times in May 2003 for defiant

behavior (AR 219, 223) and three times in April 2003 for similar outbursts.  (AR 221).

On April 11, 2003, Barton Elementary School's principal, John Mauricio, wrote a letter explaining that Plaintiff had five major incidents of behavioral outburst in his fourteen days of enrollment. (AR 220).  He described Plaintiff as being "extremely defiant," exhibiting "aggressive physical behavior towards others, unwilling to cooperate and being "completely and totally out of control." (Id.).

On July 14, 2005, Plaintiff's special education teacher, Helen Young, wrote a letter explaining that Plaintiff was a special education student being serviced in a Special Day Class. (AR 224).  She explained that Plaintiff has a specific learning disability and that he is on medication for ADHD.  (Id.).  Mrs. Young noted that Plaintiff has difficulty attending to tasks, paying attention and focusing, and that he has anger issues.  (Id.).

**THE THREE-STEP CHILD DISABILITY SEQUENTIAL EVALUATION PROCESS[7]**

Under the provisions of the Social Security Act, amended in 1996 by Public Law 104-193, a child under the age of eighteen is "disabled" if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be

---

[7] The three-step child disability sequential evaluation process applies for the period during which a plaintiff is under eighteen years old.  Beginning the day the plaintiff turns eighteen, the Commissioner will then apply the disability rules used for adults filing new claims. 20 C.F.R. § 416.924(f).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  An impairment causes marked and severe functional limitations if it meets, medically equals, or functionally equals an impairment in the listings.  20 C.F.R. § 416.924(d).

In determining whether a child is eligible for SSI benefits on the basis of disability, the ALJ conducts a three-step inquiry.  20 C.F.R. § 416.924(a).  The steps are:

    (1)   Is the child engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

    (2)   Is the child's impairment or combination of impairments severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

    (3)   Does the child's impairment(s) meet, medically equal, or functionally equal an impairment in the Listing of Impairments ("Listing") described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.

A claimant "meets" a listed impairment if his own impairments match those described in a listing.  20 C.F.R. § 416.925(d).  A claimant "medically equals" a listed impairment if he demonstrates medical findings related to his own impairment that are of equal medical significance to the listed one, even if his showing is deficient in other ways.  20 C.F.R. § 416.926(a).  A claimant "functionally equals"

8

a listing if his impairments result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[8]   20 C.F.R. § 416.926a(a).   There are six domains of functioning the ALJ considers in determining functional equivalence:   (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

**THE ALJ'S DECISION**

In his January 20, 2005 decision, ALJ Schloss concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 19).   At the first step of the three-step child disability sequential evaluation process, the ALJ determined that Plaintiff was not engaged in substantial gainful activity at any time during the period of adjudication.  (AR 16).  At the second step, he found that Plaintiff has a medically determinable impairment, ADHD.  (AR 19).

Next, at the third step, the ALJ discussed Plaintiff's medical records, he noted that Plaintiff's father and a ME testified at the hearing, and mentioned reports from school personnel. (AR 12-15).  He determined that Plaintiff's impairment did not meet or medically equal an impairment in the Listings.  (AR 19).  The ALJ then evaluated Plaintiff's functional limitations in the six domains, and determined that Plaintiff suffered less than "marked" limitations in four areas and

---

[8]  "Domains" are broad areas of functioning intended to capture all of what a child can or cannot do.  20 C.F.R. § 416.926a(b)(1).

9

no limitations in two areas. (AR 15-16). Because he concluded that Plaintiff did not suffer from an "extreme" or "marked" limitation in any of the six domains, he determined that Plaintiff's impairments do not functionally equal any listed impairment. (AR 19). Accordingly, he found that Plaintiff is not disabled for purposes of eligibility for SSI payments. (Id.).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not

substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d
at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff alleges that the Commissioner's decision should be
overturned for two reasons.  First, he asserts that the ALJ erred by
concluding that Plaintiff's ADHD did not meet or equal a listing.  (Jt.
Stip. at 2).  Second, Plaintiff argues that the ALJ failed to properly
consider the non-medical evidence before him.  (Jt. Stip. at 3).  For
the reasons discussed below, the Court agrees that remand is required
because the ALJ did not properly consider all the non-medical evidence
before him.[9]

**A.    <u>The ALJ Did Not Properly Consider The Non-Medical Evidence In The
Record</u>**

Plaintiff alleges that the ALJ failed to properly consider the non-
medical evidence before him.  (Jt. Stip. at 3).  Specifically, Plaintiff
claims that the ALJ erred in disregarding Plaintiff's father's
testimony.  (Jt. Stip. at 15).  He also complains that the ALJ did not
properly consider the letter from one of Plaintiff's teachers,
Plaintiff's school principal, and "[m]ore than 25 pages of evidence
documenting disruptive behavior and poor social interactions[.]"  (Jt.
Stip. at 15-18).

---

[9]    Because the Court concludes that the ALJ did not properly
consider the non-medical evidence before him, it will not address the
remaining issues raised by Plaintiff.

**1.  Lay Witness Testimony**

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's functional limitations. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4)-(e) & 416.913(d)(4)-(e). The ALJ may discount the testimony of lay witnesses only if she gives "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, Plaintiff's father testified that Plaintiff was having severe behavioral problems at school, had been suspended three time that school year, and was unwilling to do schoolwork. (AR 245-48). He also stated that Plaintiff was taking psychotropic drugs, Mirtazapine and Concerta, for the ADHD but that he did not believe the medicine was helping Plaintiff. (AR 246-47). He also testified that Plaintiff had previously taken Ritalin but "it was making him a zombie." (AR 248). Plaintiff's father reported that Plaintiff's academic performance was significantly below grade level and that he was now entirely in a special education setting. (AR 247-48).

The ALJ briefly described Plaintiff's father testimony in his decision. (AR 18). However, the ALJ did not credit the testimony. Contrary to Plaintiff's father's testimony, the ALJ found that Plaintiff

12

had "only occasional behavioral problems" and that he was "performing well in special education courses[.]" (AR 19).  The ALJ even found that Plaintiff's ADHD "is controlled on Ritalin" despite Plaintiff's father's testimony that Plaintiff was no longer taking Ritalin  (Id.).  As the ALJ did not give specific germane reasons why he disregarded Plaintiff's father's testimony, he committed error.

### 2.   Letters And Reports From School Personnel

The Court notes that the ALJ appears to have selectively considered only the evidence that supports his decision.  For example, the ALJ cited the portion of Plaintiff's Individual Education Program ("IEP") that referred to Plaintiff as a gifted artist and described his love of writing creative stories but did not mention the IEP's assessment that Plaintiff was reading at a second grade level.  (See AR 17, 226).  Also, the ALJ did not note that Plaintiff's CAT-6 scores were dismally low.[10] He only mentioned that Plaintiff had "some impairment in reading skills."  (AR 17).  Further, the ALJ noted the IEP did not note any significant behavioral problems (AR 17), but did not discuss that three of the five IEP goals dealt with Plaintiff's behavior.[11]  (AR 229-31). The ALJ cannot "reach a conclusion first, and then attempt to justify

---

[10]   Plaintiff scored in percentile one in reading, the percentile fifteen in language, the percentile eight in math, the percentile two in spelling, and in percentile zero in science.  (AR 227).

[11]   The IEP goals were that Plaintiff will improve cooperation with authority and peers, he will increase the use of appropriate language and positive non-verbal behavior, he will follow verbal and non-verbal directions without negativity, Plaintiff will increase reading literacy and comprehension, and Plaintiff will increase math reasoning skills. (AR 229-31).

it by ignoring competent evidence in the record that suggests an opposite result." <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1455-56 (9th Cir. 1984); <u>see also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998) (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").

Moreover, the ALJ mischaracterized certain evidence. The ALJ noted that Plaintiff "exhibited <u>some</u> disruptive behavior in class such as shouting at other students" and that Plaintiff was "suspended on occasion during the fourth grade." (AR 17) (emphasis added). However, the ALJ's description of the evidence is misleading. Plaintiff had at least <u>thirteen</u> serious behavioral outbursts which resulted in Student Referral Forms from Barton Elementary School. (AR 202-05, 206, 209, 211-18). Also, the record includes two Notices of Suspension from San Bernardino City Unified School District during the fourth grade and Plaintiff's father testified that he had already been suspended three times in the fifth grade. (AR 208, 210). There is also other documentation that Plaintiff was removed from class five times in May 2003 for defiant behavior (AR 219, 223), and three times in April 2003 for similar outbursts. (AR 221). The ALJ's characterization of the evidence as "some disruptive behavior" is a gross understatement.

In addition, the ALJ did not discuss the letter from Barton Elementary School principal, John Mauricio, or the letter from Plaintiff's teacher, Jodi Moran. Both of these letters complained about Plaintiff's disruptive behavior. The ALJ is required to consider letters from friends and family. See <u>Schneider v. Commissioner of Soc.</u>

14

Security, 223 F.3d 968, 975 (9th Cir. 2000). However, an ALJ need not expressly discuss all of the evidence presented. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) and citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Rather, the ALJ must explain why significant probative evidence has been rejected. Vincent, 739 F.2d at 1394-95.

Here, the letters from Ms. Moran and Mr. Mauricio were significant and probative. Ms. Moran and Mr. Mauricio had personal contact with Plaintiff, they observed his behavior daily, and were especially qualified to opine on his limitations. Moreover, whether Plaintiff has a "marked" limitation in his ability to interact and relate with others or his ability to acquire and use information is probative of whether Plaintiff's impairment functionally equals a listing. See 20 C.F.R. § 416.926a(a)-(b)(1).[12] As such, the ALJ erred by failing to discuss significant and probative evidence in the record.

In sum, the ALJ erred by failing to give specific germane reasons why he ignored lay witness testimony. The ALJ also erred by selectively accepting certain evidence, mischaracterizing other evidence, and failing to discuss significant and probative facts in the record.

---

[12] The Court notes that the letters from Ms. Moran and Mr. Mauricio contain similar information as evidence discussed by the ALJ. However, because the ALJ did not properly address other non-medical evidence with similar information, the letters from Ms. Moran and Mr. Mauricio are not cumulative.

15

**B.     Remand Is Required to Remedy Defects in the ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497-98 (9th Cir. 1984).  Because the ALJ erred by improperly rejecting Plaintiff's father's testimony and by failing to properly consider other non-medical evidence before him, the case must be remanded to remedy these defects.  Upon remand, the ALJ must re-consider Plaintiff's father's testimony and all other non-medical evidence.  The ALJ must obtain a consultative examination of Plaintiff and request additional records or testimony from Plaintiff's father, treating physicians, counselors, and teachers.  As the Court did not reach all of the issues raised in this case, the parties shall not be precluded from addressing those issues or any other issues on remand.[13]

\\
\\
\\
\\
\\
\\
\\
\\

---

[13] The Court is particularly concerned with the ME's confusing and inaudible testimony.  At point one point in the transcript, the ME's testimony was inaudible for forty seconds.  (AR 256).  This Court's ability to determine whether Plaintiff meets, medically equals or functionally equals a listing is highly dependent on the ME's testimony.

1

**CONCLUSION**

2

3        Consistent with the foregoing, and pursuant to sentence four of 42

4   U.S.C. § 405(g),[14] IT IS ORDERED that judgment be entered REVERSING the

5   decision of the Commissioner and REMANDING this matter for further

6   proceedings consistent with this decision. IT IS FURTHER ORDERED that

7   the Clerk of the Court serve copies of this Order and the Judgment on

8   counsel for both parties.

9

10  DATED: June__26_, 2007.

11                                  _____/s/_____
                                         SUZANNE H. SEGAL
12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27      [14]  This sentence provides: "The [district] court shall have power
    to enter, upon the pleadings and transcript of the record, a judgment
28  affirming, modifying, or reversing the decision of the Commissioner of
    Social Security, with or without remanding the cause for a rehearing."

17